# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL NO. 1:13-CV-00326-FDW

| | |
|---|---|
| SCOTTIE R. PHILLIPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is now before the Court on Plaintiff Scottie R. Phillips' ("Plaintiff's") Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56, (Doc. No. 10) filed on May 2, 2014, and Defendant Commissioner of Social Security Carolyn W. Colvin's Motion for Summary Judgment (Doc. No. 9), filed on June 4, 2014. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED and, accordingly, the Administrative Law Judge's ("ALJ") is AFFIRMED.

## I. STATEMENT OF FACTS

Plaintiff alleges onset dates of disability ("AOD") of March 28, 2011, and April 1, 2011. (Doc. No. 7-3). Because the Commissioner found that Plaintiff was 45 years old at AOD and has only completed the twelfth grade, Plaintiff is classified as a "younger individual" with "at least a

1

high school education." Id. Plaintiff's past work includes working as a loader, carpenter, and mechanic. Id.

Plaintiff's treating physicians include Dr. North, Dr. Carroll, and Dr. Thissee of Bakersville Community Medical Clinic. (Doc. No. 7-3). Plaintiff is diagnosed with insulin-dependent diabetes mellitus type I, high blood pressure, three fractured vertebrae, esophageal spasms, and various foot afflictions including hammertoes and diabetic neuropathy. Id.

The Commissioner denied Plaintiff's claim at step five and found that Plaintiff is not disabled and could perform a full range of light work. (Doc. No. 7-3).

## II.  PROCEDURAL HISTORY

Plaintiff filed applications for Social Security Disability Insurance and Supplemental Security Income benefits on March 28, 2011. (Doc. No. 7-3). Plaintiff's applications were denied, and Plaintiff requested a hearing for reconsideration. The hearing commenced on July 25, 2012, and on August 6, 2012, the ALJ issued a decision denying Plaintiff's application. Id. Plaintiff then filed a Request for Review of Hearing Decisions with the Appeals Council, which the Appeals Council subsequently denied. (Doc. No. 7-3). Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g). Plaintiff claims that the Commissioner's decision is not based on proper legal standards and is not supported by substantial evidence as 42 U.S.C. § 405(g) requires.

## III.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, this Court "'must uphold the factual findings of the ALJ if they are

supported by substantial evidence and were reached through application of the correct legal standard.'" Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)).  This Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence.  Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345.  Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the Commissioner's final decision.  Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV.   DISCUSSION

The question before the ALJ was whether Plaintiff was "disabled," as defined for Social Security purposes, between March 28, 2011, and the date of last insured, December 31, 2014. On August 6, 2012, the ALJ found Plaintiff was not "disabled" at any time between March 28,

3

2011, and the date of last insured. The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. C.F.R. § 404.1520(a). The five steps are:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and

(5) Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). Here, the ALJ has determined that Plaintiff was not disabled under the fifth step in the above evaluation process. (Doc. No. 7-3). Particularly, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id.

On appeal, Plaintiff makes the following assignments of error: 1) that the Commissioner improperly assessed severity at step two; 2) that the Commissioner improperly assessed credibility; 3) that the Commissioner improperly weighed opinion evidence; and 4) that the Commissioner improperly assessed residual functional capacity. (Doc. No. 9).

**A. The ALJ's Step-Two determination of severity**

At step two of the sequential analysis, Plaintiff must show the existence of a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities." SSR 96-3p. Such basic work activities include: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers, and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). In the present case, the ALJ found that Plaintiff had severe impairments of diabetes mellitus type 2, peripheral neuropathy, status-post fractured lumbar vertebrae, and degenerative changes of the right shoulder. (Doc. No. 7-3). Plaintiff contends that the ALJ erred by declining to find his hypertension and esophageal spasms as severe impairments in the ALJ's step-two determination of severity. (Doc. No. 9). Plaintiff also contends that the ALJ erred by charging Plaintiff's poverty against him. Id.

Regarding the hypertension, Plaintiff argues that the ALJ considered only a handful of the Plaintiff's blood pressure readings and instances in which Plaintiff's hypertension was not controlled. (Doc. No. 9). However, "[t]he [ALJ's] failure to discuss every specific piece of evidence 'does not establish that [she] failed to consider it.'" Mitchell v. Astrue, No. 2:11-cv-00056-MR, 2013 WL 678068, at *7 (W.D.N.C. Feb 25, 2013) (quoting Elias v. Astrue, No. 3:07-cv-43, 2008 WL 181662, at *21 (N.D. W.Va. Jan. 22, 2008)). Furthermore, the ALJ considered numerous blood pressure readings over a 15-month period. (Doc. No. 7-3). The ALJ

also considered numerous instances in which Plaintiff's hypertension was controlled or uncontrolled. Id.

Plaintiff also alleges that the ALJ did not consider the relationship between Plaintiff's transient ischemic attack and his uncontrolled hypertension. (Doc. No. 9). However, Plaintiff did not submit evidence concerning the relationship. (Doc. No. 11). Additionally, there is no medical evidence demonstrating the limitations of Plaintiff's alleged side effects from his medication. Indeed, office notes repeatedly indicate the denial of side-effects of Neuremedy, the prescribed medication for Plaintiff's idiopathic peripheral neuropathy and pain in limbs. (Doc. No. 7-3). Plaintiff's own statements of symptoms and side effects alone is insufficient to establish a medically determinable impairment. 20 C.F.R. § 404.1508. Therefore, the ALJ's determination of Plaintiff's hypertension is supported by substantial evidence.

Regarding the esophageal spasms, Plaintiff argues that the ALJ failed to consider the entire record. (Doc. No. 9). Specifically, the ALJ allegedly failed to consider Plaintiff's subjective testimony, medication, and surgery. Id. Plaintiff states that the ALJ failed to consider his nitroglycerine prescription. Id. The ALJ, however, specifically noted Plaintiff's prescribed nitroglycerine for his throat spasms. (Doc. No. 7-3). Plaintiff further states that because the effects of surgery would be temporary, his throat spams are non-treatable. (Doc. No. 9). Plaintiff has not, however, submitted any evidence for his assertion. Furthermore, Plaintiff's treating physician note that he is "well-nourished" despite the spasms. (Doc. No. 7-3). Plaintiff submits no evidence that the spasms prevent him from obtaining nourishment. Plaintiff's visit to the emergency room due to a choking spasm reveals a "generally normal" physical examination. (Doc. No. 7-3). As a result, ALJ noted that the limiting effects of the Plaintiff's throat spasms is

not supported by medical evidence. Therefore, the ALJ's determination of Plaintiff's esophageal spasms is supported by substantial evidence.

As to Plaintiff's poverty, a claimant may not be penalized for failing to seek treatment that he or she cannot afford in cases of disabling pain. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir.1986). However, "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility." Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 2013). Furthermore, the claimant bears the burden of providing medical evidence, and Plaintiff failed to submit evidence regarding his poverty. (Doc. No. 9). The record does not state that Plaintiff was denied treatment or medication due to his lack of funds. Plaintiff points only to the record that states he picked up his prescriptions through a charitable source beginning June 2011. Id. Therefore, the ALJ's determination did not utilize Plaintiff's poverty against him.

### B. Plaintiff's subjective complaints

Plaintiff also argues that the ALJ failed to properly evaluate the credibility of his subjective complaints of pain and disabling limitations. (Doc. No. 9). It is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). Rather, the question for the Court is whether the credibility determination of the ALJ is supported by substantial evidence. Id. In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two-part process. Id. At 594; Hines, 453 F.3d at 565. First, the ALJ must assess whether there is a medically determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that it could reasonably be expected to produce the symptoms or pain of which

7

claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010).

At the second step, the ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact his or her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. "This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's statements and the rest of the evidence." Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595. In addition to the objective medical evidence, the ALJ considers: (1) the daily activities of claimant; (2) the location, duration, frequency, and intensity of the claimant's functional imitations and restrictions resulting from the pain or symptoms. 20 C.F.R. § 404.1529(c)(3); see also Aytch, 686 F. Supp. 2d at 605.

Often, as done in this case, the ALJ will begin with the second prong of the test, finding by implication that the record contains evidence which could be expected to produce some of the pain claimed by Plaintiff. Then, as also done here, the ALJ determines that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. The Court agrees with the Commissioner, in that, the ALJ properly evaluated the credibility of Plaintiff's complaints of pain.

Plaintiff claims that the ALJ failed to consider the pain and limitations from non-severe conditions, such as hypertension and esophageal spasms. (Doc. No. 9). There is sufficient evidence to support the ALJ's findings as discussed above.

Plaintiff also claims that the ALJ failed to consider objective evidence indicating impaired function. (Doc. No. 9). Specifically, Plaintiff states that the ALJ failed to consider Plaintiff's hammertoe defect and the necessity for metatarsal arch bars in his shoes. Id. The ALJ also allegedly failed to consider Plaintiff's antalgic gait, hyper-pronated stance and gait, and slightly decreased range of motions in his ankle. Id. These impairments allegedly cause Plaintiff to feel numb and pain in his feet and fingers. Id. Plaintiff, however, failed to provide evidence of the limiting effects of these impairments. A mere diagnosis of an impairment says nothing about the severity of the condition. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). The ALJ found that Plaintiff had good use of his feet and arms and was even encouraged to exercise regularly. (Doc. No. 7-3). This finding is supported by sufficient evidence.

Plaintiff also claims that the ALJ failed to consider his subjective testimony, specifically his descriptions of pain. (Doc. No. 9). The ALJ considered Plaintiff's hearing testimony which includes his statements regarding his symptoms, medication usage, functional limitations, treatment other than medication, and daily activities. (Doc. No. 7-3). The ALJ then concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. Id. However, the ALJ found that his statements concerning the intensity, persistence, and limiting effects of his symptoms did not preclude the claimant from light work. Id. The ALJ considered the re-adjustments in Plaintiff's medications, the fluctuations in his blood sugars, the level of treatment he required, the lack of significant adverse side effects from

his medication, his potential issues with non-compliance, and that no treating source limited his activities. Id.

Plaintiff also claims that the ALJ failed to weigh lay testimony from his wife and sister in law. (Doc. No. 9). Due to the similarity between the two, however, the ALJ considered the lay testimony when considering Plaintiff's testimony. (Doc. No. 7-3).

Plaintiff also claims that the ALJ failed to properly consider Plaintiff's poverty and its barrier to care in his compliance and credibility. (Doc. No. 9). However, Plaintiff failed to submit evidence regarding his poverty. The ALJ based the determination primarily upon Plaintiff's medical reports. (Doc. No. 7-3). As discussed above, the ALJ's determination did not utilize Plaintiff's poverty against him.

### C. The ALJ's evaluation of medical opinions

An ALJ must assign weight to all opinion evidence. 20 C.F.R. § 404.1527 (2014). In general, the treating physicians' opinions are entitled to the most weight. 20 C.F.R. § 404.1527(c) (2014). To be assigned controlling weight, however, the following criteria must be present: 1) the opinion must be from a treating source; 2) the opinion must be a medical opinion concerning the nature and severity of Plaintiff's impairment; 3) the opinion must be well-supported by medically acceptable "clinical and laboratory diagnostic techniques;" and 4) the opinion must be consistent with other "substantial evidence" in the administrative record. SSR 96-2p, 1996 WL 374188 at *2; see also Boyd v. Colvin, No. 3:12-cv-000774-MU, 2013 WL 3935061 at *3 (W.D.N.C. July 30, 2013).

If an opinion is not assigned controlling weight, the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6); see Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir.2006).

Here, Plaintiff claims that the ALJ did not weigh or state the weight attributed to the treating physician's opinion, Dr. North. (Doc. No. 9). However, "[a]lthough the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam). The record shows that the ALJ specifically considered Dr. North's opinion but declined to assign it weight because the ALJ concluded Dr. North's opinion is not supported by the objective evidence and thus is not consistent with other substantial evidence in the administrative record. (Doc. No. 7-3). The ALJ also noted that Dr. North's opinion failed to "document an impairment or combination of impairments which would be expected to result in severe or disabling pain." Id. Thus, the ALJ's assessment of the treating physician's opinion is supported by substantial evidence.

Plaintiff also claims that the ALJ's RFC determination is not supported by medical evidence because the ALJ only assigned the State Agency physicians' opinion partial weight. (Doc. No. 9). However, "[n]either the Commissioner's regulations nor applicable case law require the ALJ to obtain medical expert testimony or evaluation concerning a plaintiff's RFC." Thacker v. Astrue, No. 3:11CV246-GCM-DSC, 2011 WL7154218, at *6 (W.D.N.C. Nov. 28, 2011) adopted 2012 WL 3800052 (W.D.N.C. Feb. 6, 2012). Therefore, the ALJ's RFC determination is supported by substantial evidence.

### D. The ALJ's Residual Functional Capacity determination

The ALJ found:

> The State Agency medical consultants who reviewed this claim at the reconsideration level of adjudication determined that the claimant was capable of performing medium exertion requiring occasional pushing and/or pulling with the lower extremities; occasional climbing of ramps/stairs; no climbing of ladders/ropes/scaffolds; frequent balancing, stopping, kneeling, crouching, and crawling; and no concentrated exposure to hazards such as machinery and heights. The undersigned has afforded the claimant the benefit of every doubt and finds that he is limited to performing light exertion. Other limitations are not supported by the record.

(Doc. No. 7-3). The RFC must be determined from medical evidence, and Plaintiff contends that the ALJ's determination lacked medical evidence. (Doc. No. 9). Plaintiff contends that the ALJ's reliance on this RFC is erroneous and prejudicial to Plaintiff. Id. Plaintiff argues that had the ALJ considered his testimony, written statements to the Agency, and statements to doctors about pain, hypertension, and diabetes management, substantially greater limitations in RFC would result. Id. It is not up to the Court to reweigh and reexamine evidence, rather, the Court must simply determine whether the ALJ's RFC determination is supported by "substantial evidence." Hays, 907 F.2d at 1456. Based on the previous discussion, the Court finds that the ALJ's RFC determination is supported by "substantial evidence."

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment, is GRANTED, and the ALJ's decision is AFFIRMED. The Clerk's Office is directed to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: August 15, 2014

Frank D. Whitney
Chief United States District Judge